**The below described is SIGNED.**

**Dated: August 30, 2012** _____
                            **WILLIAM T. THURMAN**
                            **U.S. Bankruptcy Chief Judge**



_____

Duane H. Gillman (#1194)
dgillman@djplaw.com
Jessica G. Peterson (#11210)
jpeterson@djplaw.com
**DURHAM JONES & PINEGAR, P.C.**
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
Telephone: (801) 415-3000
Facsimile:  (801) 415-3500
Attorneys for Plaintiff

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> THOMAS FRY, <br><br> Debtor. | Bankruptcy Case No. <br><br> 10-37960 WTT <br><br> [Chapter 7] |
| STEVEN R. BAILEY, as Chapter 7 Trustee of BRICK & MORTAR INVESTMENT, L.L.C., <br><br> Plaintiff, <br> vs. <br> THOMAS FRY, <br><br> Defendant. | Adversary Proceeding No. <br><br> 11-02374 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This adversary proceeding came before the Court for trial on July 31, 2012, at 10:00 a.m.,

the Honorable William T. Thurman, presiding, on the issue of Thomas Fry's entitlement to a

discharge based on 11 U.S.C. § 727(a)(7).  The Plaintiff, Steven R. Bailey, chapter 7 Trustee for

the estate of Brick & Mortar Investment, L.L.C. ("Brick & Mortar"), asserts that Thomas Fry,

SLC_1171770.2

the debtor in case no. 10-37960, failed to maintain and preserve proper records to allow the Plaintiff to evaluate the claims filed in the Brick & Mortar bankruptcy case. Thomas Fry was a one-half owner and managing member of Brick & Mortar and as such, should have maintained records pursuant to 11 U.S.C. § 727(a)(3). The Plaintiff is under a duty to investigate the claims filed in the Brick & Mortar case. The Plaintiff does not have sufficient records to allow him to do so. The Court took testimony of Mark. D. Hashimoto, Steven R. Bailey, and received Exhibits. Based thereon, and based on the additional argument provided to the Court, IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:

## FINDINGS OF FACT

1.      **JURISDICTION**. The jurisdiction of the court is properly invoked under 28 U.S.C. § 157(a), 28 U.S.C. §§ 1134(b) and 1334, 11 U.S.C. § 523(a)(10), and 11 U.S.C. §§ 727(a)(3) and 727(a)(10). This is a core proceeding which is an adversarial proceeding within the meaning of Rule 7001(6), Federal Rules of Bankruptcy Procedures and a core proceeding under 28 U.S.C. § 157(b)(2)(I). The parties consent to entry of a final judgment or order by the bankruptcy judge. The jurisdiction of the court is not disputed and is hereby determined to be present.

2.      **VENUE**. Venue is laid in the Central Division of the District of Utah and is proper pursuant to 28 U.S.C. § 1409.

3.      **NOTICE**. The parties have had adequate and reasonable notice of the trial date and time.

4.      **BRICK & MORTAR BANKRUPTCY**. On December 1, 2009, Brick & Mortar filed a voluntary Chapter 11 petition. *See* Dkt. 1 of case no. 09-33291. On February 22, 2010,

the Court ordered that the case be converted to a Chapter 7 bankruptcy case. *See* Dkt. 96 of case no. 09-33291.

5. Brick & Mortar was an organization that identified business and investment opportunities for Thomas Fry's other entities and made those connections between investors and projects. Brick & Mortar was involved in millions of dollars of transactions that required record keeping for tax, accounts receivable and accounts payable purposes, and for repayment of investments. Documentation of the investments was also essential for the protection of all parties to the transactions.

6. Thomas Fry is a sophisticated business person who has formed multiple businesses and invested in many others. Thomas Fry is sufficiently sophisticated that he should have maintained written records for Brick & Mortar.

7. Brick & Mortar was the type of enterprise where individuals were investing cash, which is fungible and difficult to trace, and in which records are necessary to ascertain what loans were made and paid back.

8. The records produced by Thomas Fry are not helpful to ascertaining the legitimacy of the claims and are not sufficient to liquidate specific assets of the Brick & Mortar estate.

9. **<u>PRODUCTION OF RECORDS</u>**. On or about May 22, 2010, Thomas Fry was issued a Subpoena for a Rule 2004 examination, requiring him to produce all records and documents for Brick & Mortar relating to the following subjects by June 11, 2010:

   a. Brick & Mortar Investments, LLC or any of their principals, accountants, attorneys, or employees or other affiliates.

3

    b.    Individuals who are creditors of Brick & Mortar Investments, LLC or creditors of BTN or Working Capital, LLC.

    c.    Entities that are creditors of Brick & Mortar Investments, LLC or creditors of BTN or Working Capital, LLC.

    d.    Taurus Drilling, LLC.

    e.    Taurus Drilling Services, ULC,

    f.    Writestick Technologies, LLC,

    g.    Bikestick Technologies, LLC,

    h.    Blast City, LLC,

    i.    Bio-Path Holdings, Inc.,

    j.    Swiss Private Trust,

    k.    Tigerlight Inc.,

    l.    Patrick Bamford,

    m.    Paul Hancock,

    n.    Roger Breau,

    o.    ASKM, LLC,

    p.    Ascione, Heideman & McKay, L.L.C.,

    q.    Apisa Tinoisamoa,

    r.    Shannon Tinoisamoa.

  s. Individuals or entities that owe money or may owe money to Brick & Mortar Investments, LLC, including the amount, the nature of the debt owed and whether it is disputed and the basis for any such dispute.

*See* Dkt. 150 of Case No. 09-33291.

  10. According to the Trustee's records, the following documents for Brick & Mortar were not provided:

  a. Income tax returns for 2008 and 2009.

  b. Financial statements for various years.

  c. A general ledger or detailed check register for Brick & Mortar for any period, which would supply basic information related to the source and amounts of funds deposited, the payee and the purpose of the funds expended and assets and liabilities owned by Brick & Mortar.

  d. Copies of cancelled checks for the period of inception through the bankruptcy petition date.

  e. Paid vendor invoices or other documentation which would support the purpose or validity of expenditures related to Brick & Mortar.

  f. Lists of investors who invested money with Brick & Mortar and the amounts invested, or amounts repaid to those investors.

  g. Sufficient documentation regarding other entities of which Brick & Mortar had an ownership interest. Although the operating agreements have been produced, no other documentation has been produced that would indicate the amounts invested, the character of the investment, the amounts repaid, or the character of the repayments.

5

11. On June 11, 2010, counsel for the Trustee conducted a 2004 Examination of Thomas Fry. On June 11, 2010, during the 2004 examination of Thomas Fry, counsel for the Trustee asked Thomas Fry if he had given the subpoenaed documents to the Trustee. Thomas Fry answered that he had complied. *See* June 11, 2010 Transcript of 2004 Examination at p. 4.

12. As a result of Thomas Fry's failure to adhere to his obligations and deliver the required records and documents in the Brick & Mortar case, the Plaintiff is without the basic financial information needed to determine potential claims against Brick & Mortar in the above-captioned case, including avoidance actions and evaluating the validity of the claims filed.

13. **ADDITIONAL 2004 EXAMINATIONS**. Thomas Fry filed a voluntary Chapter 7 petition on or about December 31, 2010, in the United States Bankruptcy Court for the District of Utah, Central Division. *See* Dkt. 1 of case 10-37960. On April 9, 2012, the Plaintiff served a subpoena duces tecum on Thomas Fry, requesting that he produce additional documents related to Brick & Mortar on or before May 1, 2012. *See* Dkt. 80 of case no. 10-37960.

14. **EXPERT REPORT**. Plaintiff hired Mark D. Hashimoto, CPA, of Piercy Bowler Taylor & Kern, to provide his expert report on the adequacy of the records produced by Thomas Fry, manager of Brick & Mortar, with respect to the financial history of Brick & Mortar. On December 13, 2011, Mr. Hashimoto issued his Expert Report. The expert report opines:

> **Opinion 1**: Upon review and analysis of the documents produced to date by Thomas R. Fry related to the Debtor [Brick & Mortar], he has failed to produce financial records in a sufficient quantity or quality from which the Debtor's [Brick & Mortar's] financial condition or business transactions might be ascertained. As such, it is not possible to analyze and determine the Debtor's [Brick & Mortar's] financial history without performing extensive work to reconstruct such financial history.

6

15. According to Mr. Hashimoto's records, the following documents have still not been provided:

    a. Income tax returns for 2008 and 2009.

    b. Financial statements for various years.

    c. A general ledger or detailed check register for Brick & Mortar for any period, which would supply basic information related to the source and amounts of funds deposited, the payee and the purpose for the funds expended and assets and liabilities owned by Brick & Mortar.

    d. Copies of cancelled checks for the period of inception through the bankruptcy petition date.

    e. Paid vendor invoices or other documentation which would support the purpose of validity of expenditures related to Brick & Mortar.

    f. Lists of investors who invested money with Brick & Mortar and the amounts invested, or amounts repaid to those investors.

    g. Sufficient documentation regarding other entities of which Brick & Mortar had an ownership interest. Although the operating agreements have been produced, no other documentation has been produced that would indicate the amounts invested, the character of the investment, the amounts repaid, or the character of the repayments.

*See* Dkt. 14.

16. On June 29, 2012, after reviewing all of the additional documents produced by Mr. Fry, Mr. Hashimoto supplemented his expert report. According to Mr. Hashimoto's records, the following documents had still not been provided:

   a. Income tax returns for 2008 and 2009.

   b. Financial statements for Brick & Mortar for 2006, 2007, 2008 or 2009.

   c. A general ledger for Brick & Mortar for any period, in electronic or hard copy form, which would supply basic information related to the source, amount and purpose of funds received, the payee, amount and purpose for funds expended, assets owned and liabilities owed.

   d. Copies of cancelled checks or deposited items for the period of inception through the bankruptcy petition date of December 1, 2009.

   e. Paid vendor invoices or other documentation which would support the purpose of validity of expenditures related to Brick & Mortar.

   f. Lists of investors who specifically invested money with Brick & Mortar including amounts invested, amounts repaid and terms related to their investment and repayments. The absence of this information leaves the Trustee with no ability to determine the identity of valid claimants and amounts owed by Brick & Mortar. In addition, the Bankruptcy Schedules, signed under penalty of perjury by Thomas R. Fry, list 98 unsecured creditors. Of those claimants listed, only 19 show an actual claim amount while the other 79 claims show the claim amount as "unknown". In addition, all but four claims that are listed as contingent, unliquidated or disputed are actually claims in favor of Mr. Fry and three entities listed as owned by Mr. Fry. Therefore, the

8

Bankruptcy Schedules offer no help in determining valid claims of the Brick & Mortar estate. While various schedules were provided by or on behalf of Mr. Fry that appear to be related to investors who invested funds with Mr. Fry, it appears that funds were commingled between the web of entities controlled by Mr. Fry, and, therefore, the specific creditors of Brick & Mortar are difficult if not impossible to ascertain.

        g.      Documentation on investment activity by Brick & Mortar in other entities. Based on Brick & Mortar's 2007 federal income tax return, as of December 31, 2007, Brick & Mortar had an ownership interest in three entities by the name of Taurus Drilling, LLC, Writestick Technologies, LLC and Bikestick Technologies, LLC. Brick & Mortar's Bankruptcy Schedules also show an ownership interest in three additional entities by the name of Blast City, LLC, Bio-Path Holdings, Inc. and Tigerlight, Inc. At this time, no financial documentation has been produced by Mr. Fry which would document the amounts invested, the character of the investment, the amounts repaid, or the character of the repayments.

*See* Dkt. 36.

    17.    **<u>LACK OF DOCUMENTS.</u>**  Without the basic financial books, records and other documentation listed above, it is not possible to analyze and determine the financial history of Brick & Mortar. As such, basic tasks such as claims analysis, identification and valuation of assets of Brick & Mortar, or a search for potential avoidance actions are not possible without performing extensive work to reconstruct the financial history of Brick & Mortar. See Dkt. 36.

    18.    In addition to keeping inadequate records with respect to creditors, Thomas Fry has failed to produce a stock certificate for Bio-Path Holdings, LLC, which certificate is an asset

9

of the Brick & Mortar estate and which the Plaintiff needs in order to recover additional funds for the estate.

19. Thomas Fry had a duty to maintain and preserve adequate records from which Brick & Mortar's losses, gains and financial condition could be ascertained.

## CONCLUSIONS OF LAW

20. Thomas Fry has failed to maintain and preserve adequate records, from which the financial condition of Brick & Mortar might be ascertained.

21. Under Tenth Circuit precedent, the Plaintiff must prove: (1) Thomas Fry failed to maintain and preserve adequate records of Brick & Mortar; and (2) that the failure made it impossible to ascertain Brick & Mortar's financial condition and material business transactions from the records that were maintained. *See Gillman v. Carson (In re Carson)*, Case No. 01-27055-JAB, Adv. No. 01-2362 (Bankr. D. Utah Oct. 24, 2003); *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997); *Cadle Company v. Stewart (In re Stewart)*, 263 B.R. 608, 615 (B.A.P. 10th Cir. 2001). *See also United States v. Ellis*, 50 F.3d 419, 425 (7th Cir. 1995) (holding that § 727 makes a complete financial disclosure a condition precedent to discharge).

22. Intent is not an element of a section 727(a)(3) objection to discharge. *See Gillman v. Carson (In re Carson)*, Case No. 01-27055-JAB, Adv. No. 01-2362 (Bankr. D. Utah Oct. 24, 2003) (citing *Community Bank of Homewood-Flossmoor v. Bailey (In re Bailey)*, 145 B.R. 919, 924 (Bankr. N.D. Ill. 1992) *Northmark Bank v. Herzog (In re Herzog)*, 140 B.R. 936 (Bankr. D. Mass. 1992).

SLC_1171770.2

23. When determining whether Thomas Fry's failure to maintain records makes it impossible to ascertain Brick & Mortar's business transactions, the Court may consider (1) the nature of the enterprise Brick & Mortar is involved in; (2) the sophistication of Thomas Fry; and (3) the quality of the records provided. *See Brown*, 108 F.3d at 1295.

24. Plaintiff is only required to establish, by a preponderance of the evidence, that Thomas Fry failed to keep and preserve records by which Brick & Mortar's material business transactions could be ascertained. *See, e.g., In re Carson*, *supra*. The Plaintiff has met this burden.

25. Thomas Fry has failed to keep or preserve sufficient recorded information, including books, documents, records, and papers, from which Brick & Mortar's financial condition or business transactions might be ascertained on or within 1 year of filing his chapter 7 petition; and as a 50% owner and managing member of Brick & Mortar, is an insider. *See* 11 U.S.C. § 727(a)(3).

26. As a result, Thomas Fry's discharge in this bankruptcy case should be denied pursuant to 11 U.S.C. § 727(a)(7).

**---END OF DOCUMENT---**

## ATTORNEY'S CERTIFICATE OF SERVICE

I certify that on the ____ day of August, 2012, I caused to be delivered correct copy of the foregoing **Findings of Fact and Conclusions of Law,** as follows:

    Peter J. Kuhn
    U.S. Trustee's Office
    *Via* ECF Notice

    Philip G. Jones
    *Via* ECF Notice

    Steven R. Bailey
    *Via* ECF Notice

    Thomas Ryan Fry
    4069 West Red Pine Cove
    Cedar Hills, UT 84062

    Thomas Ryan Fry
    881 West State Road, # 140-101
    Pleasant Grove, UT 84062
    thomas.fry13@gmail.com

    /s/ Kristin Hughes
    Durham Jones & Pinegar, P.C.

SLC_1171770.2

## CLERK'S CERTIFICATE OF SERVICE

I certify that on the ____ day of August, 2012, I caused to be delivered correct copy of

the foregoing **Findings of Fact and Conclusions of Law,** as follows:

    Peter J. Kuhn
    U.S. Trustee's Office
    *Via* ECF Notice

    Philip G. Jones
    *Via* ECF Notice

    Duane H. Gillman
    Jessica G. Peterson
    Durham Jones & Pinegar
    *Via* ECF Notice

    Steven R. Bailey
    *Via* ECF Notice

    Thomas Ryan Fry
    4069 West Red Pine Cove
    Cedar Hills, UT  84062

    Thomas Ryan Fry
    881 West State Road, # 140-101
    Pleasant Grove, UT 84062
    thomas.fry13@gmail.com

                                                      _____
                                                      Clerk of the Court

SLC_1171770.2